WILLIAM G. MORGAN *et al. d.b.a.* WARWICK BRASS FOUNDRY *et al. vs.* STILLMAN WHITE FOUNDRY COMPANY, INC. *et al.*

JUNE 10, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

410

ROBERTS, J. This is a petition for an apportionment under general laws 1956, §28-34-8, between prior employers, of the total compensation paid by the petitioners as the last employers of an employee who was disabled by an occupational disease. The petition was heard by a trial commissioner, and on April 18, 1956 a decree was entered wherein he found among other things that 50 per cent of the employee's disability was due to the occupational disease and therein ordered the respondents to reimburse the petitioners proportionately on such basis for the compensation paid the employee. From this decree both the petitioners and the respondents appealed to the full commission, which on October 29, 1956 entered a decree affirming the decree of the trial commissioner. The case is before this court on the appeals of both the petitioners and the respondents from that decree.

There is no substantial dispute concerning the material facts in this case. The employee Roger Spina, now deceased, was employed by petitioner Warwick Brass Foundry from January 26, 1950 to October 3, 1952, or for almost three years. The record shows that the employee consulted Dr. Nathan Kiven for the first time on October 4, 1952. In the history which he gave to the doctor he complained of exhaustion and breathlessness over a period of six months, which symptoms he stated became apparent during April 1952. After a study of the case the diagnosis of the doctor was that Spina was suffering from silicosis and other physical infirmities. The testimony of the doctor was to the effect that Spina had had silicosis for a long time before the disease became symptomatic, and that he had had the disease for at least ten years. It thus appears from such testimony that the employee had the disease in the month of April 1942. It is not disputed, however, that it did not become symptomatic until April 1952.

After a hearing the trial commissioner entered a decree in which he made several findings. Among other things he found that the employee "became totally disabled on October 3, 1952" and that "Fifty percent of Roger Spina's disability was due to silicosis." The trial commissioner also made a finding that "The silicosis from which Roger Spina was suffering on October 3, 1952, developed gradually over a period of not less than ten years prior to October 3, 1952." He made further findings that during such ten-year period the employee had been employed by respondents for varying periods of time as a moulder; that during such employment he had been breathing air which contained silica dust; and that his silicosis resulted from breathing such dust.

The trial commissioner also found that petitioners had paid compensation to the employee and medical expenses on his behalf in the total amount of $5,427.34, and that one half of such amount was paid for disability due to the silicosis and for medical treatment resulting therefrom. The decree thereupon ordered respondents to pay to petitioners certain specified amounts as a contribution to these payments, which amounts were determined on the basis of an apportionment as provided for by the act.

The right of a last employer, who pays compensation to an employee for disability flowing from an occupational disease, to recover a part thereof from prior employers by apportionment is provided for in G. L. 1956, §28-34-8, which reads as follows:

"The total compensation due shall be recovered from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If, however, such disease was contracted while such employee was in the employment of a prior employer, the employer who is made liable for the total compensation as provided by this section, may appeal to the workmen's compensation commission for an apportionment of such compensation among the several employers who since the

contraction of such disease shall have employed such employee in the employment to the nature of which the disease was due. Such apportionment shall be proportioned to the time such employee was employed in the service of such employers and shall be determined only after a hearing, notice of the time and place of which shall have been given to every employer alleged to be liable for any portion of such compensation. If the commission finds that any portion of such compensation is payable by an employer prior to the employer who is made liable for the total compensation as provided by this section, it shall make an award accordingly in favor of the last employer, and such award may be enforced in the same manner as an award for compensation."

Under this statute an employee disabled by an occupational disease may recover total compensation from the employer who last employed him in work the nature of which caused the disease. The statute further provides that if such disease was contracted while the employee was in the employment of a prior employer, the last employer, having paid the total compensation, may recover contributions thereto from such prior employer under the apportionment provisions of the act. The clear intent of the statute is that prior employers shall become liable for contributions under an apportionment order when the employee contracted the disease while employed by a prior employer.

The respondents contend that the commission erred in ordering that the compensation paid to this employee by petitioners be apportioned between them because it was not shown that he contracted the disease while employed by either of them. The basis for this argument is that the word "contracted" as used in the statute requires a showing that the disease became symptomatic or disabling while the employee was in their employment. If there is merit in this contention, they would not be liable for the apportionment provided in the act because in the instant case it is undisputed that the occupational disease became symp-

tomatic while the employee was employed by the last employer. The evidence upon which the commission relied in ordering an apportionment was medical testimony that the employee had contracted the disease in 1942.

However, we do not think that this contention has merit. It is clear from the context in which the word "contracted" is used that the legislature recognized the fundamental theory that diseases which are classified as occupational are diseases which do not make themselves manifest by symptoms in their initial phases but rather develop progressively over long periods of time because of a continued exposure to causal conditions. The medical evidence in the case is to this effect.

In *Gosselin* v. *Parker Brass Foundry*, 83 R. I. 463, we considered the question of whether an employee seeking to recover total compensation from his last employer under the act was required to prove that he had "contracted" the disease while working for that last employer. In that case at page 466 we stated: "An occupational disease by nature is usually a gradual growth over a long period of exposure to adverse conditions. Ordinarily it is not disabling at the time of its origin or contraction, and a petitioner becomes aware of it so as to take advantage of the statute only when the disease becomes incapacitating." We think it is clear from this language that in that case we recognized that an employee may have "contracted" an occupational disease prior to its becoming manifest through symptoms or disability and we now so hold.

An occupational disease is "contracted" within the meaning of our statute when some organ, tissue or fluid of the body develops a pathology characteristic of the particular disease. The time when such pathology developed and the disease therefore was contracted is a question of fact. It is to be proved by evidence from competent sources and particularly from the testimony of medical witnesses. Whatever other courts may have said about the meaning

of the word "contracted" when used in similar statutes, we are of the opinion that our legislature did not intend by its use thereof that liability for an apportionment under the statute was to depend upon a symptomatic manifestation of an occupational disease or its disabling effect upon the employee during his employment by prior employers.

We do not think it is necessary to quote from the record evidence which would support the finding of the trial commissioner that the disease was contracted in 1942. An examination thereof reveals that there is such evidence, and in the circumstances the finding of the commission is conclusive and binding upon this court. We think that the decree insofar as it makes a finding that the disease was contracted in 1942 and orders an apportionment must be sustained.

As a further ground of appeal from the decree of the commission respondents contend that there is no evidence in the record from which the commission could find that the employee was totally disabled from and after October 4, 1952. We are of the opinion that this ground of appeal is without merit. We have examined the record and find therein evidence upon which the commission could base its finding that the disability of the employee was total after October 4. Some of this evidence takes the form of the testimony of Dr. Nathan Kiven, the employee's attending physician.

Doctor Kiven testified in part that the employee "was disabled because of the complications resulting from silicosis which produces fibrosis which produces pulmonary emphysema which produces heart failure, and as a result of that this man was unable to work." During redirect examination the doctor was asked the following question: "Because of the raising of these questions of trying to separate one from the other, the silicosis developed into the fibrosis with the emphysema; was there total disability or

inability to work from that cause alone irrespective of whether he had subsequent cardiac failure?" The medical witness answered this question in the affirmative.

Without further specification of the testimony which we have observed on this point, it is our opinion that there was evidence from which the commission was warranted in finding that the employee was totally disabled from October 4, 1952. We are not concerned with whether such testimony was contradicted in part by other testimony of this witness or by that of other witnesses, since it is well settled that upon an appeal under the statute this court does not pass upon the weight of conflicting evidence. *Cabral* v. *Perry's Express Co.,* 85 R. I. 47, 125 A.2d 221.

The last ground upon which respondents appealed from the decree is that the commission was in error in finding that the medical and hospital expenses were in part due to the silicosis. The respondents contend that there is evidence in the record which is conclusive that silicosis is not susceptible to treatment and that such treatment as was given by the physicians in the hospitals was given for the purpose of treating the vascular disturbance and the heart disease. There is no merit in the contention. There is in the record substantial evidence to the effect that there was a causal connection between the silicosis and the other infirmities which followed it, and it is our opinion that the commission did not err in finding that the medical expenses for treatment were causally connected with the silicosis.

In the decree appealed from the commission made a finding that "Only one-half of the amount so paid out [$5,-427.34] is attributable to disability due to silicosis or for medical, hospital and other expenses in connection with the treatment of silicosis." From this finding petitioners appealed on the ground that there is no evidence in the record upon which the commission could have based this finding.

As we have already noted in considering respondents' appeal, the commission properly found that the employee

was totally disabled. It also found that this total disability was only 50 per cent due to the silicosis and the infirmities which resulted therefrom. If these findings are inconsistent, the inconsistency becomes more apparent than real when the record is examined closely. There is in the record evidence in the form of testimony of the medical witness testifying on behalf of the employee from which the commission properly found total disability.

However, there is also in the record evidence from which it may properly be found that the disability and death of the employee were contributed to in part at least by causes other than the silicosis. This testimony came from the medical witness who examined the employee on behalf of respondents. It is a situation in which the commission elected to believe in part the conflicting testimony of each of two medical witnesses. If the findings so reached are supported by legal evidence, they are conclusive and binding upon this court, since we are without jurisdiction to weigh the evidence upon appeal. *Cabral* v. *Perry's Express Co., supra.*

It is therefore our opinion that there is evidence in the record from which the commission properly found that the total disability of the employee was only 50 per cent due to the silicosis. As we have already stated, this is the evidence that there were other contributing causes to the disability and death of the employee. We therefore conclude that the appeal of the petitioners is without merit.

The appeals of both the petitioners and the respondents are denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*William A. Gunning,* for petitioners.

*Charles H. Anderson,* for respondents Employers Liability Assurance Corporation, Ltd., and Wendell Mackintosh

et al. d.b.a. Stillman White Foundry Co., and Stillman White Foundry Co., Inc.

*Boss, Conlan, Keenan, Bulman & Rice, Francis W. Conlan,* for respondent Seaboard Foundry, Inc.